FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CESAR C.,[1]

          Plaintiff,

   v.

LELAND DUDEK, Acting
Commissioner of Social Security,

          Defendant.

No.    1:24-CV-03177-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

     Due to small bullet sequelae of the right hip; drug-induced psychotic disorder; major depressive disorder; post-traumatic stress disorder (PTSD); social anxiety; and schizoaffective disorder, bipolar type, Plaintiff Cesar C. claims that he is unable to work full-time and applied for supplemental security income benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

grounds that the ALJ improperly analyzed the opinions of the examining and consulting medical sources; the ALJ failed to conduct an adequate evaluation at step three; and the ALJ improperly assessed Plaintiff's credibility. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.      Background

In February 2021, Plaintiff filed an application for benefits under Title 16, claiming disability beginning April 2, 2017, based on the physical and mental impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration levels.[3]

After the agency denied Plaintiff benefits, ALJ Evangeline Mariano-Jackson held a telephone hearing in August 2023, at which Plaintiff appeared with his representative.[4]  Plaintiff testified, as well as a vocational expert.[5]

---

[2] AR 208-209, 210-213, 245.

[3] AR 84-88, 90-92.

[4] AR 35-57.

[5] *Id*.

1    After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ

2 found Plaintiff's alleged symptoms were not entirely consistent with the medical

3 evidence and the other evidence.[7] As to medical opinions, the ALJ found:

4    - The opinions of state agency evaluator B. Cochran, MD, to be

5      persuasive.

6    - The opinion of state agency evaluator, R. Eisenhauer, PhD, to be

7      persuasive.

8    - The opinions of consultative examiner Marquetta Washington, ARNP,

9      to be persuasive.

10   - The opinions of DSHS examining psychologist, Tasmyn Bowes, PhD,

11     to be unpersuasive.

12   - The opinions of DSHS examining psychologist, Thomas Genthe, PhD,

13     to be unpersuasive.

14   - The opinions of DSHS reviewing psychologist, Michael Jenkins-

15     Gaurnieri, PhD, to be unpersuasive.[8]

16

17

18

_____

19 [6] AR 14-34.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines

20 whether a claimant is disabled.

21 [7] AR 22-24.

22 [8] AR 24-27.

23

The ALJ also considered the statement of Plaintiff's cousin and found it to be unpersuasive.[9] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since February 10, 2021, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: small bullet sequela of the right hip; amphetamine-induced psychotic disorder with use disorder; major depressive disorder; PTSD; methamphetamine use disorder; and schizoaffective disorder, bipolar type.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and specifically considered Listings 1.18, 12.03, 12.04, 12.08, and 12.15.

- RFC: Plaintiff had the RFC to perform medium work with the following exceptions:

  [Plaintiff] can stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. [Plaintiff] can frequently climb ramps and/or stairs. [Plaintiff] can occasionally climb ladders, ropes, and scaffolds. [Plaintiff] can understand, remember, and carry out simple, routine and repetitive tasks involving only simple work-related decisions, and occasional decision-making, and changes in the work setting. [Plaintiff] can never perform assembly line work. The claimant can tolerate occasional, brief and superficial interaction with supervisors and coworkers. [Plaintiff] is

---

[9] AR 30.

limited to work requiring no public contact. [Plaintiff] can be in the vicinity of others on an occasional basis, but can never have one-on-one interaction with the public.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a lab equipment cleaner (DOT 381.687-022), floor waxer (DOT 381.687-034), and industrial cleaner (DOT 381.687-018).[10]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

## II.     Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a

---

[10] AR 19-29.

[11] AR 205-207.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

### III.    Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred when evaluating the medical opinions, erred in assessing his subjective claims, and erred in her step three analysis.  As is explained below, the Court concludes that the ALJ consequentially erred in her evaluation of the medical opinion evidence.

---

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

**A.      Medical Opinion: Plaintiff establishes consequential error**

Plaintiff argues that the ALJ erred in her evaluation of the medical opinions.[15] Specifically, Plaintiff first argues that the ALJ erred in finding that the opinions of Dr. Bowes, Dr. Genthe, and Dr. Jenkins-Guarnieri were unpersuasive.[16] Plaintiff also argued that the ALJ erred in finding Dr. Eisenhauer's opinions to be persuasive while failing to address the supportability factor in her assessment of Dr. Eisenhauer's opinions.[17] The Commissioner asserts that the ALJ reasonably found that Dr. Bowes' and Dr. Genthe's "check-box form[s]" contained no explanation and that Dr. Genthe was not aware of Plaintiff's drug history when he rendered his opinions; that the ALJ explained that Dr. Jenkins-Guarnieri's opinion was internally inconsistent; and that the ALJ reasonably found Dr. Eisenhauer's opinions persuasive because she had the most comprehensive review of the record.[18]

---

[15] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[16] ECF No. 8.

[17] *Id.*

[18] ECF No. 10.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1.    <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[19] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[20] Supportability and consistency are the most important factors,[21] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[22] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion

---

[19] 20 C.F.R. § 416.920c(a), (b).

[20] *Id.* § 416.920c(c)(1)–(5).

[21] *Id.* § 416.920c(b)(2).

[22] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

was being given.[23] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[24]

### 2. Plaintiff's Testimony

On August 23, 2023, Plaintiff appeared via telephone with his attorney for a hearing before ALJ Evangeline Mariano-Jackson.[25] Plaintiff testified that he had completed the 9th grade and had attended some 10th grade classes but did not complete 10th grade.[26] He said that he had no GED, that he was about 5'7" to 5'8", and that he did not know his weight.[27]

Plaintiff's attorney said that Plaintiff had inconsistent treatment in the past as a result of homelessness but was not in a housing program with social support and case management.[28] Plaintiff testified that he had been living in a housing unit through Yakima Neighborhood Health for two to three months, where he had support services such as case management, peer support, and counseling.[29] He said

---

[23] *Id.*

[24] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[25] AR 35-57.

[26] AR 40.

[27] *Id.*

[28] AR 40-41.

[29] AR 42.

that he had not used any substances for somewhere between six and eight months.[30] Before living in the housing program, he lived on the streets and went to counseling once a week.[31] He said that he does not take psychiatric medication because he does not like how it makes him feel but is prescribed pain medication.[32]

Plaintiff testified that he is expected to clean his room and clean the kitchen if he uses it, to meet with his case manager once a week, and meet with his therapist once a week.[33] He said that he prepares his own meals but that he uses the microwave to heat things because he cannot cook.[34] He said that he washes his clothes but does not shop because his case manager gets groceries for him.[35] He said that he will walk if he needs to go anywhere and does not take public transportation.[36] Plaintiff said he had been jailed once in the last four years and it

---

[30] *Id.*

[31] AR 42-43.

[32] AR 43.

[33] *Id.*

[34] AR 43-44.

[35] AR 44.

[36] *Id.*

DISPOSITIVE ORDER - 10

1  was for 3 days for trespassing.[37] He said he had been in jail four years ago but
2  could not remember why.[38]

3      Plaintiff testified that when he took psychiatric medications, they made him
4  feel "numb" and he did not like the feeling, so he refused them.[39] He said that the
5  housing program he was in had the right to test him for drugs if they suspected he
6  was using them but had not tested him.[40]  He said that because of his gunshot
7  wound he was limited in how long he could sit, stand, walk, and climb stairs and
8  had problems leaning on his right side.[41] He said he can stand and walk for about
9  an hour and then he has to sit for about an hour but that he cannot sit on his right
10 side and needs to lean to the left.[42]

11     Plaintiff testified that he has not worked much because of anxiety.[43] He said
12 that, after when he returned to work after he was shot, his manager was standing
13 behind him watching him and he "freaked out" and ran from the building and

14

15

16 _____

[37] AR 44-45.

17 [38] AR 45.

18 [39] AR 45.

19 [40] AR 45-46.

20 [41] AR 46.

21 [42] *Id.*

22 [43] AR 47.

23

pushed someone out of his way and was then "tackled" by security.[44] He said that

he was shot from behind and that he fears anyone standing behind him.[45] When

asked if he can handle situations in which he is around others such as the store or

a doctor's office, Plaintiff said he could not and that his case manager does his

shopping.[46] He said that if he is in a store or doctor's office and gets uncomfortable

he will leave.[47] He said that he has problems with concentration and memory.[48] He

said that he cannot remember what he did two weeks ago and that he needs to be

reminded two or three times a day to do his daily chores.[49]

     3.   <u>Medical Opinions and Relevant Medical Records</u>

        *a.*   *<u>Dr. Bowes' Opinions</u>*

On May 24, 2019, Plaintiff was examined by Tasmyn Bowes, PhD, at the

request of the Washington State Department of Social and Health Services.[50] Dr.

Bowes completed a comprehensive Psychological/Psychiatric Evaluation form in

which she noted the results of a clinical interview, detailing Plaintiff's psychosocial

---

[44] *Id.*

[45] *Id.*

[46] AR 47-48.

[47] AR 48.

[48] *Id.*

[49] AR 49.

[50] AR 470.

1  history, medical history, educational and work history, substance abuse history,

2  and activities of daily living.[51] She also detailed her clinical findings, diagnosis,

3  opined prognosis, the results of a mental status examination, and her opined

4  limitations.[52]

5      Plaintiff reported to Dr. Bowes that he was single with no children and had

6  no family other than his brother, who was homeless, and that he had been

7  homeless himself but was housed by Catholic Charities for the last 5 months.[53]

8  Plaintiff reported PTSD after being shot in 2017 when walking to a friend's house

9  but denied receiving treatment or medication.[54] He said he attended school through

10 10th grade because his father made him drop out, and that he last worked before

11 the shooting for a fruit company with his longest job lasting 6 months.[55] He said

12 that he used marijuana and methamphetamines since age 17 and recently tried to

13 get into a rehab but could not be cleared medically due to the gunshot shrapnel.[56]

14 His Beck Depression Inventory score was 34 (severe) and his Becks Anxiety

---

[51] AR 470-472.

[52] AR 472-475.

[53] AR 470.

[54] AR 471.

[55] *Id.*

[56] *Id.*

1  Inventory score was 43 (severe).[57] Dr. Bowes found symptoms of depressive

2  episodes, anxiety that became prominent after the 2017 shooting, cognitive issues,

3  substance induced psychosis, and chemical dependency.[58] Dr. Bowes diagnosed

4  PTSD; persistent depressive disorder, currently major depression, severe; and

5  methamphetamine use disorder.[59]

6      On mental status examination, Dr. Bowes noted that grooming and eye

7  contact were adequate, speech was organized but poorly maintained, mood was

8  dysphoric and affect was blunted, thought process was normal and Plaintiff was

9  oriented, Plaintiff was experiencing drug induced paranoia, concentration was

10  impaired, and abstract thinking was intact.[60].

11      Dr. Bowes opined that Plaintiff would have a moderate limitation in the

12  following basic work activities: learn new tasks, perform routine tasks without

13  special supervision, adapt to changes in a routine work setting, make simple work-

14  related decisions, ask simple questions or request assistance, and set realistic goals

15  and plan independently.[61] She opined that Plaintiff would have a marked

16  limitation in the following basic work activities: understand, remember and persist

17

18  [57] AR 472.

19  [58] *Id.*

20  [59] *Id.*

21  [60] AR 474-475.

22  [61] AR 473.

23

in completing details tasks; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal workday and work week without interruptions from psychologically based symptoms.[62] Dr. Bowes opined that Plaintiff would have a severe limitation in performing activities within a schedule, maintaining attendance or being punctual without special supervision and opined that the overall severity of Plaintiff's limitations is marked.[63] Dr. Bowes opined that Plaintiff's limitations were not primarily the result of substance abuse, that the limitations would persist following 60 days of sobriety, that the limitations would exist for 6-12 months with treatment, and that vocational services would partially minimize or eliminate barriers to employment.[64]

b.    *Dr. Genthe's Opinions*

On August 14, 2021, Thomas Genthe, PhD, examined Plaintiff at the request of the Washington State Department of Social and Health Services.[65] Dr. Genthe completed a comprehensive Psychological/Psychiatric Evaluation form in which he noted the results of a clinical interview, detailing his psychosocial history, medical history, educational and work history, substance abuse history, and activities of

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] AR 480.

daily living.[66] He also detailed his clinical findings, diagnosis, opined prognosis, the results of a mental status examination, and opined limitations.[67]

Plaintiff reported to Dr. Genthe that he was single and had no children, was currently homeless, had no driver's license, got along with others superficially but thought they were plotting against him, had been incarcerated for a month for "a bunch of things," and was not taking medication or receiving counseling.[68] He told Dr. Genthe he dropped out of school during the 10th grade and had no GED, and that he last worked "years ago" as a packer for a month and left because he was getting agitated with someone.[69] Plaintiff denied substance abuse.[70] Plaintiff denied having any hobbies or interests, but reported that he was able to groom himself, prepare meals, perform household chores, take his medication, and attend appointments.[71] Dr. Genthe's clinical findings noted symptoms of depression, PTSD, and ADD and ADHD.[72] Dr. Genthe diagnosed major depressive disorder,

---

[66] AR 480-482.

[67] AR 482-486.

[68] AR 480-481.

[69] *Id.*

[70] *Id.*

[71] AR 481-482.

[72] AR 482-483.

with anxious distress; PTSD; attention-deficit/hyperactivity disorder, combined presentation, and a rule out diagnosis of unspecified personality disorder.[73]

On mental status examination, Dr. Genthe noted that the interview was via telephone due to Covid-19 and he could not assess appearance, that speech and behavior were normal, that Plaintiff reported his mood as "fine I guess," and that affect could not be assessed.[74] Dr. Genthe found that Plaintiff's thought processes were normal, that Plaintiff presented with a history of depression and anxiety, that perception was normal, that memory was impaired as to delayed recall and short-term recall, and that fund of knowledge was limited.[75] Dr. Genthe noted that Plaintiff had impaired concentration, was impaired in the ability to think abstractly, and had fair to poor insight.[76]

Dr. Genthe opined that Plaintiff would have a moderate limitation in the following basic work activities: learn new tasks, and perform routine tasks without special supervision. He opined that Plaintiff would have a marked limitation in the following basic work activities: understand, remember and persist in completing details tasks; performing activities within a schedule, maintaining attendance or being punctual without special supervision; adapting to changes in a work setting;

---

[73] AR 483.

[74] AR 485.

[75] AR 485-486.

[76] AR 486.

asking simple questions and requesting assistance; and setting realistic goals and planning independently.[77] Dr. Genthe opined that Plaintiff would have a severe limitation in the following: communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal work day or work week without interruption from psychologically based symptoms.[78] Dr. Genthe opined that the overall severity of Plaintiff's limitations was severe.[79] Dr. Genthe opined that Plaintiff's limitations were not the primary result of substance abuse and would last for at least 12 months.[80]

c.    _Dr. Jenkins-Guarnieri's Opinions_

On September 15, 2021, Dr. Michael Jenkins-Guarnieri reviewed Plaintiff's file, including Dr. Bowes' and Dr. Genthe's reports, at the request of the Washington State Department of Social and Health Services.[81] Dr. Jenkins-Guarnieri opined that Plaintiff would have a moderate limitation in the following basic work activities: learn new tasks, and perform routine tasks without special supervision. He opined that Plaintiff would have a marked limitation in the following basic work activities: understand, remember and persist in completing

---

[77] _Id._

[78] _Id._

[79] AR 484.

[80] _Id._

[81] AR 487.

details tasks; performing activities within a schedule, maintaining attendance or being punctual without special supervision; adapting to changes in a work setting; asking simple questions and requesting assistance; and setting realistic goals and planning independently.[82] Dr. Jenkins-Guarnieri opined that Plaintiff would have a severe limitation in the following: communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal work day or work week without interruption from psychologically based symptoms.[83]

Dr. Jenkins-Guarnieri diagnosed Plaintiff with major depressive disorder, PTSD, and attention-deficit/hyperactivity disorder.[84]

> d.    _Relevant Medical Records_

On December 14, 2021, Plaintiff presented to Robin Perches, MSW, of Yakima Neighborhood Health Services for psychotherapy.[85] Plaintiff reported to MSW Perches that he had recently accompanied his cousin to hold guns and drugs for his cousin, because his cousin feared being arrested and Plaintiff would not be upset to be sent to jail where he could get food and housing. [86]MSW Perches

---

[82] _Id._

[83] _Id._

[84] AR 489.

[85] AR 529.

[86] AR 529-530.

diagnosed amphetamine induced psychotic disorder, moderate or severe.[87] MSW

Perches opined that Plaintiff had a current GAF score of 42.[88]

On December 31, 2021, Plaintiff underwent a Psychiatric Diagnostic

Evaluation at Yakima Neighborhood Health Services by James Eakin, ARNP,

PMHNP on the referral of MSW Perches.[89] ARNP Eakin diagnosed Plaintiff with

amphetamine induced psychotic disorder, moderate or severe; schizoaffective

disorder, bipolar type; and PTSD.[90] On examination, Plaintiff reported that he was

single, was homeless, did not use alcohol, and had less than a high school

education.[91] On mental status examination, Plaintiff's appearance was unkempt,

his posture was slumped, he avoided eye contact, he had accelerated motor activity,

his mood was euthymic, his affect was constricted, his speech was rapid, he had

auditory and visual hallucinations, his thought process was loose, his cognition was

impaired, his estimated intelligence was borderline, and he had a mild impairment

---

[87] AR 531.

[88] *Id*. A GAF score of 40-50 indicates a serious impairment in social, occupational, or educational functioning per the American Psychiatric Foundation, Diagnostic and Statistical Manual, DSM-IV.

[89] AR 510-518

[90] AR 510.

[91] AR 510-511.

in his ability to make reasonable decisions.[92] ARNP Eakin assessed a GAF score of 42.[93] Plaintiff reported lifelong auditory hallucinations pre-dating methamphetamine use, and refused medication but expressed a wish to attend counseling.[94]

On August 2, 2022, Plaintiff presented to MSW Perches.[95] Ms. Perches diagnosed PTSD and amphetamine induced psychosis, moderate or severe.[96] Plaintiff reported that he was homeless and having trouble sleeping due to racing thoughts.[97] He reported abstinence from substances and struggles with social interactions.[98] On mental status examination, Plaintiff had a depressed mood, auditory hallucinations, obsessive and depressive thought content, impaired concentration and attention, partial insight and a moderate impairment in his

---

[92] AR 513-514.

[93] AR 514.

[94] AR 516.

[95] AR 461.

[96] *Id.*

[97] AR 462.

[98] *Id.*

ability to make reasonable decisions.[99] MSW Perches opined that Plaintiff's GAF score was 42.[100]

On March 7, 2023, Plaintiff presented to MSW Perches.[101] Plaintiff reported that was frustrated and depressed, that he had struggled to share a room with 5 other people and fought once and was medically discharged once, that he was not a drug user, and that he stayed sober because of his dog.[102] On mental status examination, Plaintiff was thin, had slumped posture, had a hostile and defensive attitude, and had depressed irritable mood and full affect.[103] MSW Perches diagnosed PTSD.[104]

On August 4, 2023, Plaintiff presented to MSW Perches.[105] Plaintiff was not happy with his single room housing but confirmed that he had been substance free for more than three months.[106] On mental status examination, Plaintiff was unkempt, disheveled and thin; had slumped posture, was hostile and defensive,

---

[99] AR 464.

[100] AR 465.

[101] AR 454.

[102] AR 454-455.

[103] AR 457.

[104] *Id.*

[105] AR 597.

[106] *Id.*

DISPOSITIVE ORDER - 22

and had an irritable mood.[107] MSW Perches diagnosed PTSD and opined that Plaintiff had a current GAF of 42.[108]

On August 11, Plaintiff presented to MSW Perches.[109] Plaintiff reported that he was having issues with maintaining his housing, with apathy, and with irritability and was not socializing much.[110] On mental status examination, it was noted that Plaintiff had a depressed and irritable mood and depressive thought content.[111] MSW Perches diagnosed PTSD and opined that Plaintiff had a current GAF score of 42. [112]

On August 25, 2023, Plaintiff presented to MSW Perches.[113] Plaintiff reported that he was having issues with his memory and was missing large chunks of time.[114] On mental status examination, Plaintiff was thin; had a defensive, evasive, and mistrustful attitude; had a depressed mood; and has a full affect.[115]

---

[107] AR 600.

[108] *Id.*

[109] AR 591.

[110] AR 591-592.

[111] AR 594.

[112] AR 594-595.

[113] AR 584.

[114] *Id.*

[115] AR 587.

1    MSW Perches diagnosed PTSD and opined that Plaintiff had a current GAF score

2    of 42.[116]

3          4.    <u>Analysis</u>

4                a.    <u>*The ALJ's consideration of ARNP Eisenhauer's opinions*</u>

5          The ALJ found Dr. Eisenhauer's opinions to be persuasive and articulated

6    the following reasoning:

> The undersigned has also considered the prior administrative medical
> finding of State agency medical psychologist, R. Eisenhauer, PhD, and
> finds that it is persuasive. Ex. 3A. Dr. Eisenhauer provided the
> opinion that the claimant retains the capacity to understand and
> remember simple instructions, standard work-like procedures, and
> regular work locations on a consistent basis. Dr. Eisenhauer also
> opined that the claimant retains the ability to carry out simple
> instructions, maintain concentration, persistence and pace for up to
> two hours, maintain adequate attendance, and complete a normal
> workday/workweek within normal tolerances of a competitive
> workplace. Further, Dr. Eisenhauer opined that the claimant is
> limited to infrequent, routine, and superficial interactions with the
> public and coworkers; and able to interact with a supervisor to ask
> simple questions and accept simple instructions. Moreover, Dr.
> Eisenhauer opined that the claimant is able to adapt to normal,
> routine changes in a competitive workplace within normal tolerances.
> Ex. 3A/6-7. Here, too, the findings by Dr. Eisenhauer reflect the most
> comprehensive review of the record, and this review is consistent with
> the claimant's mental status findings and observations with treating
> and examining providers. See e.g. Ex. 2F/60-61, 63, 67; 4F/16; 8F/11;
> 11F/2-3; 12F/5, 9-12.[117]

18         The Court agrees with Plaintiff that on its face this analysis is deficient as to

19   consideration of the supportability factor. While the ALJ briefly address the

---

[116] *Id.*

[117] AR 25.

1  consistency factor, finding that the opinion is consistent with the record overall,

2  she fails to make any finding as to the supportability factor.

3         The ALJ is to consider the supporting explanation provided by the medical

4  source and the extent of the relevant objective medical evidence supporting the

5  opinion.[118] Moreover, the regulations provide that the most important factors that

6  the ALJ must consider are the supportability factor and the consistency factor and

7  that the ALJ is required to explain how she considered both of these two factors.[119]

8  It is not enough that the ALJ considered one of the factors, no matter how

9  thorough or detailed that explanation might be, if the second factor is ignored.

10        Here, the ALJ failed to address the supportability factor in any meaningful

11  way. The ALJ must articulate her findings and cite to supporting evidence in a way

12  that permits the Court to meaningfully review the ALJ's findings.[120]  Because the

13

14  [118] 20 C.F.R. § 404.1527(c); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

15  1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is

16  conclusory or inadequately supported).

17  [119] 20 C.F.R. § 416.920c(b)(2).

18  [120] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*,

19  849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence

20  supporting the found conflict to permit the court to meaningfully review the ALJ's

21  finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the

22  ALJ to build an accurate and logical bridge from the evidence to her conclusions so

23

1    ALJ failed to address the supportability of Dr. Eisenhauer's opinions in any

2    meaningful way, it is not possible for the Court to determine whether the ALJ

3    properly considered the opinions.

4              b.    *The ALJ's consideration of Dr. Bowes' opinions*

5          The ALJ articulated her reasoning that Dr. Bowes' opinions were

6    unpersuasive as follows:

7          State DSHS psychologist, T. Bowes, PsyD, completed a psychological
         evaluation in May 2019, in connection with the claimant's application
8          for State disability benefits. Ex. 7F/2-11; 22-31. For the records
         reviewed, Dr. Bowes indicated "none." Ex. 7F/2. The claimant was
9          reportedly using drugs daily at the time of the evaluation, and Dr.
         Bowes provided a diagnosis of meth use disorder, and recommended a
10         substance evaluation. Mental status exam findings showed that the
         claimant presented as cooperative with adequate eye contact, normal
11         speech, and logical, rationale and goal directed thought processes. Ex.
         7F/6. Dr. Bowes indicated that the claimant's memory, abstract
12         thought, and insight and judgement were within normal limits. Ex.
         7F/6-7. The claimant's results on the Trail Making tests showed
13         concentration deficits. Ex. 7F/4, 6. Dr. Bowes also indicated that the
         claimant's perception was not within normal limits, as he endorsed
14         paranoia due to methamphetamine use. Ex. 7F/6. Based primarily on
         the claimant's reported symptoms and history, Dr. Bowes indicated on
15         the check-box portion of the form that the claimant had several
         "marked" limitations, including in his ability to complete a normal
16         work day and work week without interruptions from psychologically
         based symptoms. Ex. 7F/5.

17
         However, Dr. Bowes opinion is not supported by any treatment
18         records; nor is it consistent with the overall record, which shows that
         while the claimant has some limitations due to mental impairments,
19         those limitations have been accommodated in the residual functional
         capacity assessment. Dr. Bowes also suggested that the duration of
20    _____

21    that we may afford the claimant meaningful review of the SSA's ultimate

22    findings.").

23
                                                    DISPOSITIVE ORDER - 26

claimant's limitations would last as little as 6 months, which is not consistent with disability under Agency Regulations. Further, Dr. Bowes suggested that vocational training, mental health counseling, and psychotropic medication might partially reduce barriers to employment. Thus, the undersigned finds that Dr. Bowes' opinion is unpersuasive.[121]

Plaintiff argues that the ALJ erred in her reasoning because she had no basis on which to find that Dr. Bowes based her opinions primarily on Plaintiff's reported symptoms and history; erred in finding that no treatment records supported Dr. Bowes opinions; erred in reasoning that Dr. Bowes opined the limitations would last only 6 months; and erred in reasoning that Dr. Bowes opined that vocational training, counseling, and medication might partially reduce barriers to employment.[122]

The Court agrees with Plaintiff that the ALJ erred in finding that Dr. Bowes' opinions were based primarily on Plaintiff's reported symptoms and history. Dr. Bowes conducted what appeared to be a thorough test of Plaintiff and noted that on mental status examination, Plaintiff's speech was poorly maintained, he had a dysphoric mood and blunted affect, his concentration was impaired, and he was experiencing drug-induced paranoia.[123] There is no evidence that Dr. Bowes, a trained professional, was unduly influenced by Plaintiff in any way, nor did she

---

[121] AR 26.

[122] ECF No. 8.

[123] AR 474-475.

1    indicate that Plaintiff was not truthful in answering questions. There is nothing in

2    Dr. Bowes' thorough and detailed report that would indicate a basis for the ALJ's

3    reasoning the opinions were based mainly on Plaintiff's subjective complaints and

4    the ALJ gave no explanation why she made such a conclusion.  Accordingly, the

5    Court finds this was error on the ALJ's part.

6        Next the Court considers the ALJ's reasoning that Dr. Bowes' opinions were

7    not supported by treatment records.  The Commissioner argues further that the

8    opinions were on a check-box form that was not entitled to persuasiveness.[124] The

9    Court concludes that the Commissioner's argument is erroneous. First, even the

10   ALJ did not state that the opinions were rendered on a simple check-box form, but

11   stated that they were contained in a check-box portion of Dr. Bowes' report.[125]

12       As the Court noted above, Dr. Bowes' report was quite thorough and detailed

13   and included results of a clinical interview, detailing his psychosocial history,

14   medical history, educational and work history, substance abuse history, and

15   activities of daily living; clinical findings; diagnosis; opined prognosis, the results of

16   a mental status examination, and Dr. Bowes' opined limitations.[126] For the ALJ to

17   say that the opinions were not supported by treatment notes or explanation is error

18

19

20   _____

21   [124] ECF No. 10.

22   [125] AR 26.

23   [126] AR 470-475.

DISPOSITIVE ORDER - 28

because the opinions were a portion of a narrative treatment report that explained Dr. Bowes' underlying examination findings with detail and specificity.

Additionally, the Court notes that Dr. Bowes did not state that the opined limitations would exist for a term of 6 months, but rather said they would reasonably be expected to last a period of 6-12 months, and stated that vocational services, medication, and therapy would partially improve Plaintiff's condition but did not opine it would render him capable of employment.[127]

Because the Court has concluded that the four reasons given by the ALJ to find Dr. Bowes' opinions persuasive were erroneous, the Court believes that remand is warranted.

c.    *The ALJ's consideration of Dr. Genthe's and Dr. Jenkins-Guarnieri's opinions*

The Court will only briefly address the ALJ's consideration of Dr. Genthe's and Dr. Jenkins-Guarnieri's opinions because it has already found that the ALJ erred when considering the opinions of Dr. Eisenhauer and Dr. Bowes.  The Court agrees with the Commissioner that it was proper for the ALJ to consider that Dr. Genthe was unaware at the time that he rendered his opinions that Plaintiff had a past and then-current history of substance abuse.[128] The Court notes, however,

---

[127] AR 473.

[128] ECF No. 10.

1  that Dr. Jenkins -Guarnieri was aware of Plaintiff's past and then-current drug

2  use and stated that it would be helpful to have more information.[129]

3         Because the case is remanded for further proceedings and Plaintiff attained

4  sustained remission after his last consultative examination, the Court suggests

5  that the Commissioner schedule a consultative examination at which time a

6  psychologist may determine Plaintiff's limitations in absence of substance abuse.

7         5.     Summary

8         Because the ALJ did not give good reasons for her evaluation of the medical

9  opinions of Dr. Eisenhauer and Dr. Bowes, a remand is warranted.

10  **B.     Plaintiff's Subjective Complaints: The Court finds the issue moot.**

11        Plaintiff argues the ALJ failed to properly assess his subjective complaints.

12  As discussed above, the ALJ failed to consider the medical record as a whole when

13  considering the medical opinions.  Because the Court has remanded the case for

14  consideration of the record as a whole, the ALJ will be required to consider the

15  credibility of Plaintiff's subjective complaints.

16  **C.     Step Three Evaluation: The Court finds the issue moot.**

17        Because the Court has remanded the case for consideration of the record as a

18  whole, the ALJ will be required to consider the Plaintiff's impairments at step

19  three.

20

21

22  [129] AR 487.

23

DISPOSITIVE ORDER - 30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**D.     Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[130] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[131]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the opinion evidence and make findings at each of the five steps of the sequential evaluation process.

**IV.     Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

---

[130] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[131] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of April 2025.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 32